54757-35-61

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

      Plaintiff,

v.

BONNIE L. ROTH, D/B/A BONNIE ROTH
AGENCY, CONNIE S. ROTH, D/B/A
CONNIE ROTH AGENCY, AND ROTH
AND ROTH INSURANCE AGENCY, INC.,
D/B/A ROTH AND ROTH INSURANCE,

      Defendants.

NO:  05 C 3839

Judge Ronald A. Guzman

Magistrate Jeffrey Cole

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO
## AMEND PRELIMINARY INJUNCTION ORDER, PARAGRAPH 2

American Family Mutual insurance Company ("AFM"), by and through its attorneys James P. DeNardo and Sara E. Cook of McKenna Storer, for its response to Defendants Motion to amend paragraph two of the Preliminary Injunction Order (Motion) states as follows:

This court entered a preliminary injunction in the above captioned cause adopting in its entirety the 52 page Report and Recommendation ("R&R") of the Magistrate recommending injunctive relief. Docket #67, 61, 35. The preliminary injunction order states:

"IT IS HEREBY ORDERED that Defendants;

1.  are enjoined from using for any reason any information downloaded from American Family Insurance Company's database, including the names contained in Exhibit 34;

2.  are enjoined from servicing American Family customers;

1

3.  are required to disclose to American Family the American Family customers

    contacted since February 11, 2005 and the customers who have responded to the

    solicitation,

4.  are required to return to American Family all materials in their possession related to

    American Family customers, and

5.  are required to preserve the status quo."

The Defendants have now asked to have paragraph two deleted as moot because the

restrictive covenant period has lapsed and there is no longer any contractual basis for this relief.

Plaintiffs dispute that paragraph two of the injunction is now moot. The Magistrate  found

that the Defendants  breached fiduciary duties to the Plaintiffs, that they have stolen information

from plaintiffs, concealed their misappropriation, and  that they have "glibly lied" under oath to

justify that deception.  R & R, p. 42; Docket #35.  Against this backdrop, the Defendants are

enjoined from using any data obtained from American Family's database.  Guzman Mem. Op., p.

1-2, 15, Docket #61; Preliminary Injunction Order, Docket #67.  Paragraph two expands the

prohibition to servicing any American Family Customers.

AFM would agree that "servicing"  is too broad a verb.  A more appropriate statement

would be that they are enjoined from soliciting or contacting any American Family Customers

credited to them on the date of their termination.  The reason that this language is necessary is

found in the testimony of the Defendants about their egregious misconduct.  The Defendants

have parsed language so closely that they refuse to concede that printing documents off a

computer is not copying a list, that the banner on the American Family computer stating that the

2

information on the computer is confidential and proprietary meant only the "arcane language" of the software program, and similar instances where the Defendants used the most literal interpretation of the facts to justify using the trade secrets of American Family. See e.g. R&R n.28, p28 ("The Roths willingness to say whatever was necessary to serve their purpose was illustrated by Bonnie Roth's testimony about the privacy banner that appeared every time she logged into the AFM system..."). This history requires that the Defendants be made to understand that they are enjoined from soliciting American Family Customers. Otherwise, AFM is at risk that the Defendants will justify their solicitations on some twisted construction that the solicitation is not based on the database information, but some second generation version of that data.

AFM, therefore, does not agree that the second paragraph in the injunction is "moot." The R&R makes clear that the entitlement to injunctive relief under the Wisconsin Trade Secret Act is separate and apart from the enforcement of the contractual restrictive covenant remedy. WTSA section 134.90; R&R pp 42-43. Notwithstanding whether the contractual one year provision is enforceable, injunctive relief is proper under that act.

The second paragraph of the injunctive order has no relationship to the contractual one year limitation on solicitation, other than the fact that the one year limitation is evidence of the protectable interest of AFM. The contractual provision standing alone is not the basis for the language in paragraph two and should not be the context in which that proscription is made. The Roth's conduct is a violation of the contract which is designed to protect a trade secret, and the violation of a trade secret is not limited by time. As the Magistrate pointed out in his R&R, the language of the Court in <u>Revcor Inc. v. Fame Inc.</u> applies here:

3

> "If a salesman has agreed to a restrictive covenant in his employment contract, or if he has fraudulently and surreptitiously copied or removed lists of customers form a prior employer, or if the names of actual or potential customers are confidential, not subject to memory, are not publically listed or otherwise readily obtainable, then under proper circumstances, such salesman might be enjoined from soliciting business from the customers of his prior employer."

85 Ill. App.2d 350,357 (2nd Dist. 1967); See R&R p. 48 and cases cited therein.  In this case both the violation of the contract and the fraudulent and surreptitious copying of records  justifies injunctive relief.

The damage to AFM  is in the potential  for ongoing solicitation of clients who are known to the Defendants only through misappropriated trade secrets.  The comments of the Court in one of the cases cited by Defendants, American Credit Indemnity Company v. Sacks, 213 Cal. App.3d 622, 638 (2d Dist. 1989),  are instructive. The Defendant in American Credit Indemnity sent a letter to all of her clients explaining that she was leaving her current job for a new employer.  The list of clients was deemed a trade secret under the applicable version of the Uniform Trade Secrets Act.  The Defendant  went on to tell about the interesting products the new employer had for the needs of the addressees.  This is not unlike the  solicitations sent out by the Roths.  See Exhibit 43; Exhibit 37; R & R, p. 30, N 31 on p. 30, p.31, N 32 on p. 31.  The Court in American Credit Indemnity acknowledged the employee's right to let clients know she was moving on, but she did not have a corresponding right to solicit them for business using her client list.  The Court characterized "her aggressive manner" in terminating her employment as a basis for relief.  Further, because her letter announcing her new job was a solicitation, the Court held that injunctive relief was proper for violation of the trade secret.  American Credit, supra, 213 Cal. App. 3d at 637-638.

4

In American Credit the trial court issued a TRO which directed the employee not to divulge, make known or make any use of American Credit's trade secrets and not to solicit business from any person or entity which had been an existing American Credit client during the time the employee had been employed by American Credit or any potential American Credit client the employee had become aware of as a result of her American Credit employment. American Credit, supra, 213 Cal. App. 3d at 627. However, the trial court did not enter a preliminary injunction. The Court in American Credit reversed and held that American Credit's customer list was a trade secret, that the employee's solicitation of American Credit's clients constituted a misappropriation within the meaning of the Uniform Trade Secrets Act, that the employee should have been enjoined by the trial court, that the trial court should have enjoined further unfair competition, and remanded the matter to the trial court to form injunctive relief consistent with the rulings of the American Credit Court. American Credit, supra, 213 Cal. App. 3d at 625, 637, 638. This conclusion is all the more compelling when the action involves a restrictive covenant as in this case.

The Defendants' conduct in the instant case and the holding in American Credit justify injunctive relief against the Defendants and prohibiting their soliciting or contacting anyone who was an American Family customer credited to them on the date of the termination of the Roths' agencies. The Defendants recitation on the bottom of page 3 of their Motion of Paragraph 6(k) of the parties Agency Agreements is not complete. Paragraph 6(k) provides that:

> "For a period of one year following termination of this Agreement, you will not either personally or through any agency directly or indirectly induce, attempt to induce or assist anyone in inducing any policy holder of the [plaintiff] credited to your account at the time of the termination to elapse, cancel, replace or surrender any

insurance policy in force with the [plaintiff] Complaint Exhibit A,
B, R&R, p. 5.

 In this case there were at least two, if not more, inappropriate solicitations to American Family customers. The Defendants used labels from American Family for American Family customers, as well as the lists. The trade secret is both the database and the content of the database.  If the proscription in the injunction is not broad, then the Roths have the ability to assert they did not use the database per se, but used, for instance, labels which they had in a drawer, or handwritten notes or anything else they can imagine. See e.g. Tr. pp 280-298 (confusing and vacillating testimony about labels.)

Accordingly, AFM would propose that the language of paragraph two be modified to state:

> "From contacting or soliciting any prospective, active or inactive Customer (collectively "Customer")   of AFM that were Customers credited to each and any Defendant on the date of the termination of Bonnie Roth and Connie Roth's agencies."

WHEREFORE, AFM prays that this Court enter an order modifying the order consistent with the suggested language, and grant such further relief as is equitable and just.

Respectfully submitted,

AMERICAN FAMILY MUTUAL INSURANCE CO.


By:      /s/ James P.  DeNardo
         One of its attorneys

6

James P. DeNardo
ARDC 00614688
Sara E.  Cook
ARDC 03126995
McKenna Storer
33 N. LaSalle Street
Suite 1400
Chicago, Illinois 60602
(312) 558-3900
FAX: (312) 558-8348
E-Mail: jdenardo@mckenna-law.com
            scook@mckenna-law.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 10, 2006, I electronically filed the foregoing with the Clerk of the U. S. District Court, for the Northern District of Illinois using the CM/CEF e-filing system which will send notification of such filing to the following e-mail addresses:

Wallace C. Doolittle
Law Offices of Wallace C.  Doolittle
1260 B Street, Suite 220
Hayward, CA 94541
(510) 888-0600
FAX: (510) 888-0606
wdoolittle@doolittlelaw.com

William P. Tedards, Jr.
1101 30th Street. N.W., Suite 500
Washington, D.C.  20007
(202) 797-9135
FAX: (202) 797-9139
stephanie@tedards.com

David Corbett
Corbett & Corbett
800 E. Northwest Highway, Ste. 700
Palatine, IL 60074-6513
(847) 705-3839

McKENNA STORER

By:  /s/ James P. DeNardo
James P. DeNardo
Sara E. Cook
33 N. LaSalle St., Ste. 1400
Chicago, IL 60602
(312) 558-3900
FAX: (312) 558-8348
jdenardo@mckenna-law.com
scook@mckenna-law.com

8