IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE, COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) ) | |
| vs. | ) ) ) | No. 05 C 3839 |
| | ) | Judge Ronald A. Guzman |
| BONNIE L. ROTH, D/B/A BONNIE ROTH AGENCY, CONNIE S. ROTH, D/B/A CONNIE ROTH AGENCY, and ROTH AND ROTH INSURANCE AGENCY, INC., D/B/A ROTH AND ROTH INSURANCE, | ) ) ) ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION RE:
### Plaintiff's Petition For An Award Of Attorney's Fees

In his Memorandum Opinion and Order of January 15, 2008, Judge Guzman found the defendants in contempt for violating portions of the injunction he entered in this case. As a consequence, he awarded the plaintiff the attorney's fees it incurred in moving for a finding of contempt, among other relief. He has referred the plaintiff's petition for those fees to me for a Report and Recommendation.

The plaintiff has filed an affidavit attesting to the hours its three attorneys spent on this matter and the hourly rate they billed. The total comes to $51,500, representing 269.6 hours of work. The defendants "do not take issue with the validity of the time records or the reasonableness of the rates charged . . . ." (*Memorandum of Bonnie and Connie Roth*, at 1). Given this concession, the $51,500 figure will be taken as the starting point for calculations. *See* Local Rule 54.3; *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433-34 (1983). The defendants do ask for two adjustments to that figure, however. They argue that the amount plaintiff seeks must be adjusted according to the degree of plaintiff's success in the contempt proceedings. This, according to the defendants, would result in a seventy-percent reduction. (*Id.*, at 2). They also contend that the amount should be even further reduced based on their financial condition. (*Id.*).

Degree of success is, of course, one factor to be considered in arriving at a fee award. *Hensley*, 461 U.S. at 435-37; *Gautreaux v. Chicago Housing Authority*, 491 F.3d 649, 661 (7th Cir. 2007). A court has "no authority to order a defendant to pay fees for time spent on matters unrelated to the issues on which plaintiff prevailed, efforts on matters related to the plaintiffs' success are compensable." *Gautreaux*, 491 F.3d at 661 (*citing Hensley*, 461 U.S. at 435-37). In this instance, the plaintiff charged the defendants with three categories of violations of the injunction: emailing customers in order to induce them to cancel their policies with plaintiff or allow them to lapse, retaining certain of plaintiff's materials, and failing to disclose customer contacts. (*Report and Recommendation Re: Plaintiff's Motion For Rule To Show Cause* ("R&R"), at 4). The plaintiff succeeded in proving by clear and convincing evidence that the defendants retained its materials and did not disclose customer contacts. But the plaintiff failed to demonstrate, by that same demanding standard, that the defendants attempted to induce plaintiff's active policyholders to cancel their policies or allow them to lapse. (R&R, at 10). It provided no evidence regarding the content of the emails the defendants sent to plaintiff's active policyholders – at least not beyond terse descriptions of each email's subject – meaning there was no evidence as to whether the emails were inducements covered by the injunction. (R&R, at 18). So the plaintiff was not entirely successful.

There is no specific formula to be used in determining which efforts of plaintiffs' counsel are

2

related to its successful claims, but so long as the plaintiffs' lawyers' activities are factually related to issues on which the plaintiffs have achieved relief and the work was reasonably calculated to result in relief, the district court may grant attorneys' fees. *Gautreaux*, 491 F.3d at 661-62. The defendants say only about thirty percent of the work the plaintiff's attorneys did should be compensated, but their brief offers little insight into their calculus. They simply assert that "[a]n examination of the parties' submissions, the Report and Recommendation, and [defendant's] supporting time records suggests that [defendant] probably devoted sixty to seventy-five percent of its time to developing and presenting the unsuccessful charge . . . ." (*Memorandum of Bonnie and Connie Roth*, at 2). How the defendants arrived at this figure, they don't say. Perhaps they counted pages or lines of type, or added up billing entries. But by both those methods, their estimation seems exaggerated. Because they concede that plaintiff's counsel's hours and hourly rates are both reasonable, they ought to have developed their argument that a substantial reduction to plaintiff's fee award is necessary. *See Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008)(reiterating oft-stated admonishment that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived); *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006)("An advocate's job is to make it easy for the court to rule in his client's favor . . . .").

To be sure, the email issue was "the focus" of the plaintiff's motion. (R&R, at 4). About half of the Report and Recommendation's analysis (R&R, at 12-27) is devoted to the issue. (R&R, at 12-19). That's not seventy-five percent, however, and a better guide to the amount of time plaintiff's counsel devoted to the email issue is, of course, their billing records. Review of those entries – to the extent they allow the separation of tasks into categories of charges – reveals that plaintiff's

3

counsel spent perhaps 10 to 14 hours[1] out of 269.6 hours focusing exclusively on this issue. Even if it were assumed that fully one third of the remaining "compound" time[2] were also spent on the email issue, that would still only be about 85 hours, or about thirty-one percent of the total.[3] That assumption might be a generous one as there are entries that reveal work spent entirely on the other issues – the ones the plaintiff prevailed on. At least three entries totaling 4.8 hours obviously deal with the document retention and disclosure of customer contacts issues: 03/05/07, 03/06/07, and 03/23/07. That would decrease the percentage a bit more. In other words, the defendants have overstated things by more than two-hundred percent.

The plaintiffs are at the other end of the spectrum. They argue that no reduction should be made because the defendants have a history of obfuscating discovery in this case, and that plaintiff's failure to prove their contacts with customers amounted to inducement was not the result of lack of effort on plaintiff's part. (*Plaintiff's Reply Brief*, at 4). There's something to the argument. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries, Inc.*, 2007 WL 2580491, 1 (N.D.Ill. Sept. 10, 2007). The Report and Recommendation noted that the defendants' failure to produce a list of customers they contacted that included last names precluded the plaintiff from detecting prohibited solicitations during the TRO. (R&R, at 27). And certainly, the history of this

---

[1] Review of plaintiff's statement suggest the following entries – or portions of them – specifically reflect time spent on the email issue: p.1 – 2/13/07, 2/14/07; p.3 – 3/1/07, 3/2/07, 3/6/07; p. 4 – 3/19/07; p. 5 – 4/17/07; p. 6 – 5/30/07; p. 8 – 6/4/07, 6/5/07.

[2] The balance of "compound" time would be approximately 213 hours, given that 42.8 hours represent work done in connection with defendants' objections to the Report and Recommendation, which, of course, did not deal with the email issue.

[3] Even if that percentage were raised to fifty percent, the result would still only be about forty-five percent overall.

4

matter is one of obfuscation on the defendants' parts. But that only goes so far. The plaintiffs fell short not on proof that contacts occurred – although their proof was labyrinthine (R&R, at 12-17) – but on whether those contacts constituted inducements. The plaintiffs did not even present an argument that emails like "Happy Groundhog Day" induced customers to allow policies to lapse or cancel them. (*Plaintiff's Motion for Rule to Show Cause and Other Relief*, at 6-10). They simply ignored that question, or assumed that any email qualified no matter its content, and gave no indication that the defendants had thwarted their presentation in any way.

In the end, with the foregoing factors in mind, an appropriate reduction given the degree of plaintiff's success would be thirty percent. That brings the plaintiff's fee award to $36,050. Based on what the parties have provided, this is a "best estimate[]." *Divane v. Krull Elec. Co.*, 319 F.3d 307, 315 (7th Cir. 2003).

That leaves the question of whether the fee award ought to be further reduced given defendants' financial conditions. Again, the defendants' argument that it should amounts to no more than a bald assertion: "In exercising its discretion to reach the final determination on this issue, the [defendants] request that the Court take into consideration the dire financial circumstances of the [defendants]." They offer no clue as to what an appropriate reduction might be, either by citing exemplary case law or discussing the evidence they have submitted as to their alleged impecuniousness. As for the plaintiff, it makes no argument on this point at all.

Civil contempt sanctions are properly imposed for two reasons: to compel compliance with the court order and to compensate the complainant for losses caused by contemptuous actions. *Tranzact Technologies, Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005). The court also has the discretion to award attorney's fees. *Id.* In the case of a fine, which in the civil context would

5

be levied "as a means of securing future compliance, [the court should] consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *United States v. United Mine Workers of America*, 330 U.S. 258, 304 (1947). Attorney's fees are compensatory, however, so the defendants' financial situation is not a necessary consideration, but neither is it an inappropriate one. *South Suburban Housing Center v. Berry*, 186 F.3d 851, 855 (7th Cir. 1999); *see also Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 671 (7th Cir. 2007). As Judge Posner remarked in *Sullivan*, "there is not much use trying to squeeze water out of a stone." *Id.*

Based on the unilluminated financial statements and tax returns defendants have deposited with the court, they are not flush; their liabilities exceed their assets. But neither are they "stones." They own homes, a business, and the office condominium from which they operate it (all encumbered by mortgages). The business grossed about $110,000 in 2007, with its largest outlay by far being employee benefit programs; at the time of the injunction hearing, the individual defendants, Bonnie and Connie Roth, appeared to be the business's only employees. Bonnie declared an income of $54,000, in 2007, and also received $130,000 from Social Security benefits or a retirement plan. Connie declared no income in 2007. Overall, the defendants are not destitute; they have just started a new business, and have invested much of their net worth into that. Who can say how successful that business might become before this case is over? The evidence defendants have provided is just a snapshot; they might be able to pay the fee award at some point, or over time.

But whether any of this is taken into account at all is discretionary, and there are underlying factors to consider in exercising that discretion. *See United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005); *United States v. Roberson*, 474 F.3d 432, 436 (7th Cir. 2007). The plaintiff

6

deserves to be compensated for bringing the defendants' contempt of the court's order to the court's attention. It incurred those costs reasonably, as the defendants admit, and the defendants' finances do nothing to change that. Is it simply their misfortune to be matched against an impecunious contemnor? If so, such a contemnor could flaunt an injunction without fear of being bitten in the pocketbook.

The impecunious contemnors here have exhibited a "general dishonesty" in this case (*Memorandum Opinion and Order of July 27, 2006*, at 5-7). For them, it is not a lie to say that they never "copied" any information from the plaintiff's database because they merely "printed" it. (*Id.*, at 7). Moreover, they had little regard for the court's order. (R&R, at 14 (". . . when the contractual one-year solicitation period lapsed . . . [defendant] felt she could . . . contact active policyholders of [plaintiff]. . . . But the permissibility of the solicitation was a function of the TRO . . . ."). Against that background, the defendants cannot expect much in the way of leniency. As Judge Easterbrook said in another, but not unrelated context, parties "who attempt to deceive federal judges . . . cannot expect favorable treatment on matters of discretion." *Campbell v. Clarke*, 481 F.3d 967, 969 (7th Cir. 2007).

## CONCLUSION

Accordingly, the defendants should be made to pay the plaintiff the full amount of the fee award – $36,050. Of course the parties are free to agree to any arrangements pertaining to payment that they choose, and any inability on the defendants' part to pay may be short-lived.

ENTERED:

**DATED:** August 6, 2008

Jeffrey Cole
Magistrate Judge

Any objections to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the Magistrate Judge's Report and Recommendation. *See* Fed.R.Civ.P. 72(b); 28 U.S.C. 636(b)(1)(C); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 329 (7th Cir.1995).